Armstrong v. BNSF Railway Good morning. I am Colin O'Malley. I'm here on behalf of the appellant, Mr. Glenn Armstrong. I would like to begin this morning discussing the honest belief jury instruction that was given during this FRSA jury trial. The honest belief instruction was improperly borrowed from the McDonnell Douglas line of cases. As a result, the jury instruction confused or misled the jury to an extent that it prejudiced Mr. Armstrong. Under the FRSA, a plaintiff has to show by a preponderance of the evidence that the employee engaged in a protected activity, that the employer knew about the protected activity, the employee suffered an unfavorable personnel action, and the protected activity was a contributing factor in the unfavorable personnel action. The use of the phrase contributing factor in the terminology makes it clear that defendants' motive is not something the plaintiff must prove. This Court has acknowledged that a contributing factor is something less than a substantial motivating one. The term first appeared in the Whistleblower Protection Act and defined the term... Well, the statute is a prohibition on intentional discrimination, so there does need to be a retaliatory motive. The question of contributing factor is a causation question. I guess, Judge, I would... There does need to be a discriminatory motive. Well, Judge... In this case, retaliatory motive. First of all, Your Honor, it is a safety whistleblower statute, more akin to the Aviation Investment Reform Act, also called Air 21. Right, but all of these statutes require a retaliatory motive. A retaliatory... Well, Judge, I guess... Intent to retaliate for filing the safety report. Yes, but that's not something that I think is an element that has to be proven under the four things. It is. Under the FRSA. It's clear from the statutory text that what we're focused on is retaliatory motive. And what's relaxed in this context, as opposed to some other anti-discrimination statutory contexts, is the causation factor. A cause, not B cause. A contributing factor. But some other discriminatory or anti-discrimination statutes require the discriminatory motive and action to be the cause of the employment action. But the retaliatory motive still is an element that has to be proved. I don't disagree with that, Judge. Except that, in this instance, the giving of the honest belief jury instruction... It's just stating the retaliation motive in an inverse way. In other words, if the employer was not acting within a retaliatory motive because the employer believed in good faith, that the plaintiff wasn't engaged in protected activity in good faith, it's just an inverse way of saying that element. I guess, Judge, no other court has ever allowed for an honest belief instruction in an FRSA case. That's true. This is an important case. It's an important one. The only one we've been able to find is the Montana District Court's decision in Frost v. BNSF. Frost is both factually distinguishable and contains gaps in reasoning that I don't believe should be adopted by this court. In terms of the factual difference, as a matter of fact, in line with most of the other cases when you look in this area, the plaintiff's protected activity related to a different incident than what he is later on disciplined for. For example, in Frost, the filing of the injury report was related to an April 2012 incident in Montana, but the only disciplinary action at issue was a lawsuit based in November in Wyoming. In this case, in the Armstrong case, what makes it factually different than Frost is nobody is really disputing that all of these events took place within hours of themselves. In other words, Mr. Armstrong, the event occurs, he reports the injury, his own supervisor drives him to see the doctor. He comes back. They apologize to him for what has happened to him, and he fills out an injury report. So it is all part and parcel, inextricably intertwined of the same event, which makes it factually very distinct from Frost, whereas I think Frost relies on the fact that there's two events. The legal reasoning, too, in Frost, I think, is questionable. And what I would point to is that the opinion of Frost makes no mention regarding what additional problems would occur when you give this instruction in isolation. There's no explanation whether or not the defendant's burden is to prove their own honesty, whether or not the plaintiff has to establish the defendant's dishonesty. It's not explained whether or not the good faith or the honest belief instruction is to have the clear and convincing evidence standard applied or whether or not it's the preponderance of evidence standard applied. Those issues aren't even discussed in the Frost opinion. And I think that that, from an analysis standpoint, makes it not very persuasive for this court to follow, which similarly happened in our case, which is the honest belief instruction was given in isolation with no other further instructions to it. As a matter of fact, there was an instruction given by Judge Blakey that a number of these terms are terms of art. I ask that you follow the definition that I provide you in the instructions. I'm paraphrasing here. And that you don't rely on your common sense or common definition of these terms. So when they're given an honest belief instruction without any understanding of whose burden it is to prove it, to what extent that burden has to be shown, and how these terms are to be defined, standing in isolation, I think, starts to show you the confusion and the prejudice on the part of the jury. Mr. O'Malley, what about instructions 21 and 23? Judge, I don't have the record in front of me. Well, in 21, it laid out the four elements of the prima facie case, plaintiff's prima facie case, as well as the requirement of BNSF's affirmative defense as set forth in AIR 21 burden shifting framework. Jury instruction 23 specifically focused on element of four of the prima facie case, contributing factor. Is any factor which alone or in combination with other factor tends to affect in any way the outcome of the decision? You don't think that clearly framed the issue for the jury? No, I don't. And I think what I would point to, Judge, is the fact that they filled out both jury verdict forms. They, in fact, filled out a form that they were not to fill out unless the plaintiff had met their burden. The defense argues that that shows that the jury decided that the plaintiff had not met their burden of proof. We argue that all that simply shows that there was confusion on their part when they had been specifically instructed not to fill out that portion of the verdict form. So while I understand the court's question regarding number 21 and 23, I think looking at what the jury did, in fact, do in terms of jury instructions, showed that there was prejudice, that they did not have a clear understanding of what they were supposed to do once this honest belief instruction had been inserted. The question becomes, though, and I want to make sure I spend some time on this, is even if you were to decide that the honest belief instruction was not proper in this case, I still have to show that the instructions in total resulted in prejudice to Mr. Armstrong. So I think this record clearly shows that in terms of the four elements that needed to be shown by Mr. Armstrong, that he has shown them. Quite frankly, two of the four weren't even really contested. Number two, that the employer knew about the protected activity. That wasn't really in contention. And three, the employee suffered unfavorable personnel action. Nobody denied that he was fired as a result of this. What was really in contention was, number one, that employee engaged in a protected activity in good faith, and number four, that the protected activity was a contributing factor in the unfavorable personnel action. So what I would draw your attention to is in the record, in looking at both the subjective and objective evidence in the trial record regarding number one, did Armstrong show by a preponderance of the evidence that he acted in good faith in reporting an injury on May 4, 2010? The evidence is that Clayton Johansson took Mr. Armstrong to the clinic for treatment shortly after he reported the injury. This was within almost an hour of him reporting the injury. It's important to note that this entire event occurred between Mr. Armstrong and his own supervisor. So he's now being taken to the doctor by Clayton Johansson, one of Mr. Motley's supervisors. Mr. Johansson testifies, on the way to the vehicle, I witnessed him limping to the car. We then go to see the doctor, and he limps into the doctor's office. Dr. Gloravides, the doctor that first saw him, testified that he had objective observable injuries upon examination. And then he again limps to the car, now wearing a foot brace, and then returns back to work, at which point they fill out the injury report. During which time, the supervisor who had been involved in the incident actually apologizes to him before they fill out the injury report. Mr. Armstrong voluntarily engages in a reenactment, believing that he's participating in helping the railroad understand how it is that he got injured. So I point to all this evidence because, in addition, Mr. Motley was removed from service for three days, and most importantly, the railroad placed Mr. Armstrong on an on-the-job injury off-duty. And he remained in that status until after his disciplinary hearing. All of these facts point to what the jury heard in terms of whether or not he met his burden by a preponderance of the evidence for that first element. All of these facts go to show that he did, in fact, meet his burden, in the event you were to say that this jury instruction was not, the good faith jury instruction was not properly applied. The next question is, by a preponderance of the evidence, was Mr. Armstrong's injury report a contributing factor to the railroad's decision to fire him? The railroad's own records say that it is. The termination letter that Mr. Armstrong received from the railroad explicitly cited the May 4, 2010 injury and his employee personal injury occupational illness report. I think that's the white light, which indicates I'm into my rebuttal time at this point. So I will save it. If there's no questions, I'll save my additional comments for rebuttal. All right, thank you, Mr. Motley. Thank you. Mr. Ballinon? Thank you. May it please the court, Paul Ballinon with BNSF Railway Company. On the first question, whether the district court erred in issuing the honest belief instruction, this court should affirm the verdict in the judgment. When Mr. Armstrong notified BNSF that he had been attacked by his supervisor, Chris Motley, the general manager of the Chicago division, Matt Igoe, immediately began a workplace violence investigation into Mr. Motley, not Mr. Armstrong. During the course of that investigation, a video was uncovered suggesting that this event could not have occurred, and Mr. Igoe reasonably believed that this event did not occur, that this attack was physically impossible, because Mr. Motley was standing in one corner of this glass house, the office at BNSF at Union Station, while Mr. Armstrong was in the opposite corner of the room by the door. The jury heard all of this evidence, the jury saw the video, and the jury was able to match what Mr. Igoe was saying, what all the other BNSF managers were testifying to during the trial, and determine for themselves whether Mr. Igoe or any other BNSF manager honestly and reasonably believed that Mr. Armstrong had not been attacked. That was the evidence that came in. The jury cited BNSF on the first question, and the jury also cited BNSF on the affirmative defense. Now it's clear that the jury didn't have to answer the second question, but they did, and that's dispositive of this appeal, simply because if BNSF proves by clear and convincing evidence that it would have taken the same action absent any protected activity, that means that there's still no liability under the FRS. Right, that goes to the question of prejudice, but the threshold question is whether this is a proper jury instruction on the meaning of retaliatory motive, and there is a concern that it improperly shifts the burden to the plaintiff on the affirmative defense issue, which is supposed to be the defense burden, and to a heightened standard of proof to boot, so maybe you could address that. Absolutely, and I'll address that with a couple of points. The first point is that this court and Kosiara, the Eighth Circuit, and Gunderson have held and determined that it is relevant to look at the honest belief of the actors when they're making their decision, and that's simply because if they had taken action because of their honest belief, that means that a contributing factor was not a factor in their decision. So that's point one. Point two is that when you look at the instructions as a whole, the jury wasn't misguided. They were instructed to look at all of the evidence and consider all of the evidence when assessing this case. Mr. O'Malley has discussed the McDonnell-Douglas standard in the context of employment discrimination cases, but this court's own case law says that McDonnell-Douglas doesn't apply in the context of an actual case going to the jury. That is, the jury isn't instructed about the three-part burden shifting. In the McDonnell-Douglas case, the key question is... But what we're talking about is how the jury should be instructed on the issue of retaliatory motive. So maybe you could address that directly. I find Kosiara really hard to understand, and this isn't, again, a causation question. This is a definition of what it means to hold a retaliatory motive. Sure. So why is this a good definition of that and consistent with the statute? Again, I'd put the two little points of this argument on there. First is that they've never objected to the actual language of this particular instruction. I thought there was an objection. They've objected to the concept of an honest belief and whether a concept of an honest belief applies in an FRC. That's enough to preserve it. Okay. Certainly to the extent that they preserve this particular issue, the honest belief instruction here references several things. One, it references based on. So the jury was instructed that they're only to look at the honest belief of the actual managers and the decision-maker in this case. The jury was also instructed to look at honestly held belief. So it's up to the jury to make determination, which they did here, that the belief was reasonable, it had a basis in fact, and as I mentioned earlier, the jury could match what was said during the course of the trial. It could match the video to what Mr. Igoe or any other BNSF manager testified to as to why they believed that Mr. Armstrong had lied or was dishonest or misrepresented the facts. In addition to that, the jury was instructed that if they conclude. So there was nothing to suggest that any question as to the honest belief issue was taken away from them and they were automatically to assume that BNSF honestly held a belief just because the manager said so. It's if they conclude. In instruction eight, this particular set of instructions told the jury to look at the entirety of all the evidence and to consider all of the evidence as it was presented in the course of the trial. So certainly just by virtue of the language, I don't think there's anything wrong with this. The judge was also saying that if the jury concludes that plaintiff did not engage, I'm sorry, that defendant terminated plaintiff's employment based on its honestly held belief that plaintiff did not engage in protected activity under the FRC in good faith, then it was reasonable for BNSF to have then concluded that the plaintiff was terminated because of the lie, because of the dishonesty, because of misrepresentation, not protected activity in good faith. So the district judge wasn't pegging this to actual protected activity that was protected under statute. So I think on that basis, there's nothing wrong with the language of this particular instruction. In addition to that, our trial counsel elaborated in the closing argument how this instruction should be viewed. That is that if the jury honestly believed that the BNSF managers thought that this event could not have happened, that Mr. Armstrong had lied, had been dishonest, or had misrepresented the facts, then they should fine for BNSF. So certainly there are a couple of ways to go at that particular issue, and I think it all leads to the conclusion that yes, BNSF honestly believed that Mr. Armstrong had not been attacked in this case. Even if the court does assume, though, that the honest belief instruction was an error, the court should still fine for BNSF simply because the affirmative defense has been proven in this case. With respect to the insubordination issue, it's clear that the PEPA policy, which is the discipline policy of BNSF, specifically states that insubordination is a stand-alone dismissible offense. And the PEPA policy is at RSA 1216. In addition to that, the notice of investigation references insubordination, so it's clear Mr. Armstrong knew that he would be up on charges for insubordination and that the investigations would be focused on insubordination. Mr. Igoe testified that Mr. Armstrong was insubordinate for refusing to stay in the glasshouse and to talk about this issue. That's at RSA 471. And to the extent that in a normal FRSA case, you've got to sort of engage in metaphysical gymnastics as to whether we would have or we wouldn't have dismissed or disciplined an employee for undertaking a certain action. In this case, the dismissal letter actually references insubordination. So we don't have to engage in those what is or those hypotheticals as to whether we would or would not have done it. We actually did do it, and we did it in fact. So certainly in this case, even if there was an issue with the honest belief instruction, which I submit there wasn't, the court should still find for BNSF because the affirmative defense has been proven. This notion that because the jury answered the affirmative defense when they didn't need to answer it somehow evinces confusion. Well, two things on that, Your Honor. First of all, they didn't actually ever object in the trial court to the fact that the jury answered that second question when they didn't need to answer it. But I'd like to posit a different interpretation apart from confusion. The jury heard all the evidence. They heard all the testimony, saw this video in the course of a week and a half. And I think that the jury wanted to make a statement and make it clear, unambiguous, resolve any ambiguity whatsoever that BNSF did nothing wrong in this case. There's nothing inconsistent with the jury finding against Mr. Armstrong and also finding for BNSF on the second question. All roads lead to the same result, and that is that BNSF would not be liable under the FRSA. Well, we did have two trials here, and this instruction was disallowed in the first, and there was no valid verdict, right? That's correct. There was a mistrial in the first case. And then the second trial, the judge allowed this instruction. That seems to be the only difference. And also the judge could have looked at the facts differently as it came into the course of the trial. It's unclear why the judge allowed it in the second trial but not in the first. It's just a legal question about whether it's a good statement of the law. It has nothing to do with what the proofs, you know, any subtle differences in the proofs. It suggests that the instruction might have made a difference. Not necessarily in this case because the way the evidence came in, again, it was the jury's domain to look at the evidence, look at the video, determine if, in fact, the decision makers at BNSF, including Mr. Igoe, testified in accordance with what the video or what their perceptions of the video were. The jury could have had a different perspective of what the video showed. For instance, during the course of this trial, the plaintiffs argued stridently that Mr. Motley was standing right by the door. They even have a photograph that they showed multiple days during the course of this trial in which Mr. Motley was holding the door open. They suggested that that was a reenactment photo. And, therefore, because it was a reenactment photo, it must have suggested that Mr. Motley had to have been by the door  Factually speaking, the plaintiffs brought this issue to the forefront during the course of this trial, and I think it was certainly appropriate for the district judge to take all that evidence and to note that the plaintiffs had argued pretext during the course of this trial and properly submitted an instruction to the jury, which was Instruction 24. If I just might conclude on the second issue related to the costs, we agree with the plaintiff on two things. One, Marks, I think, answers this question. And, two, as the plaintiff admitted, the FRSA is silent as to whether a defendant can seek costs in an FRSA action. Unfortunately, I think that admission forecloses their issue related to costs because the Supreme Court specifically said if a statute is silent with respect to costs, then there's no overcoming of the presumption under Rule 54 to award them. If the Court has no other questions, we would seek the judgment of the district court be affirmed on both the cost issue and on the main issue. Thank you. Mr. O'Malley? The honest belief instruction improperly shifted a burden back to Mr. Armstrong to have to rebut it. I mean, when you look at the totality of the record and the two trials that were in this case, in this case, the honest belief instruction goes down to, well, he reported an injury. We don't deny he reported an injury, but we honestly believed at the time that he was making it up, so therefore we fired him. We're sorry. We shouldn't be held liable. That's what the honest belief closing that the defense counsel gave when he used that instruction. That is not the law. He reported an injury. Nobody's doubting the fact that he reported the injury. Even if the part and parcel of how that injury occurred in his interactions with Mr. Motley, that doesn't matter because under the FRSA, once he reports the injury, it shifts to them not to take an adverse action against him, which they did. In terms of the insubordination, the record on the insubordination is not that clear that anyone would not fire for it. It's not an immunity statute or a strict liability statute. There is a requirement of retaliatory motive. I agree, but the with a relaxed causation requirement. There may be multiple causes for the adverse employment action, and if retaliatory motive is won, then the burden shifts, but not until retaliatory motive is proved. And then on this record you have before you, I don't think any reasonable jury could conclude that it was not proven in terms of what went on with this hearing, with the discipline, and the events of that night when he reported the injury, and everything that went on at that point. So I do think, Your Honor, that the four elements that needed to be shown were shown, shifting the burden to them at a higher standard. So their mindset of whether or not they did this in good faith, that by looking at the video and within a few days they had already determined that they weren't going to interview Mr. Armstrong, they weren't going to return his two phone calls, they weren't going to conduct any additional investigation, they didn't bother to get the medical records, they ignored the two orthopedic surgeons that said that both of his injuries to a reasonable degree of medical certainty were caused by the events of that night. They didn't look into any of those things. And they just simply say because of insubordination, his refusal to stay in the room, that's why we fired him. The problem with that is Mr. Armstrong was a military police officer as well as a prison guard, and if you watch the video, he simply removes himself from a violent confrontation as his training had trained him to do. He simply steps outside and remains outside on his phone. He doesn't get on the train, even though Motley doesn't even have the authority to stop him doing that. So the insubordination charge that he was eventually fired for is not found in the record. They didn't actually prove it. They just come in and say, well, we fired him for insubordination. Real quick, I see the orange light is on. In terms of the cost argument, I ask that you please consider that very carefully. The reason is that this kind of cost, if you look at the reasoning of Marks, the reasoning of the Supreme Court in Marks, they give a hypothetical where they say in the event that you have an issue like this where you have one provision that talks about costs being awarded and another provision not being awarded, that can take the discretion away from the district judge in awarding costs. That is in line with the FRSA's underlying purpose. You have to remember, Mr. Armstrong's case languished for 210 days in his OSHA filing with the Department of Labor. It's only upon filing it in the district court he then has to undergo two trials and both sides rack up additional costs in pursuing the case. I see my red light is on. Thank you, Your Honor. Thank you, Mr. O'Malley. Thanks to all counsel. The case is taken under advisement. Thank you.